**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                    :
CORWIN WOODSON,                     :
                                    :      Civil Action No. 11-292 (RMB)
Petitioner,                         :
                                    :
v.                                  :      O P I N I O N
                                    :
WARDEN DONNA ZICKEFOOSE,            :
                                    :
Respondent.                         :
_____:


APPEARANCES:

Corwin Woodson, Petitioner Pro Se
#33596-083
FCI - Fort Dix
Inmate Mail/Parcels
EAST: P.O. BOX 2000
Fort Dix, New Jersey 08640

Karen Helene Shelton, Attorney for Respondent
Office of the US Attorney
402 East State Street
Trenton, New Jersey 08608

**BUMB, District Judge**

Petitioner Corwin Woodson, a prisoner currently confined at

the Federal Correctional Institution at Fort Dix, New Jersey, has

submitted a petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2241.[1]   (Docket Entry No. 1.)   The sole respondent is

_____

[1] Section 2241 provides in relevant part:
(a) Writs of habeas corpus may be granted by the Supreme Court,
any justice thereof, the district courts and any circuit judge
within their respective jurisdictions.
                         ***
(c) The writ of habeas corpus shall not extend to a prisoner
unless-... (3) He is in custody in violation of the Constitution

Warden Donna Zickefoose, who filed an answer to the petition. (Docket Entry No. 10.)  Petitioner filed a reply to Respondent's answer.  (Docket Entry No.11.)  For the following reasons, the petition will be denied without prejudice.

## I.  BACKGROUND

On May 17, 1995, Petitioner was sentenced in the United States District Court for the Eastern District of Virginia to a 180 month term of imprisonment for Conspiracy to Distribute Excess of 50 grams of Cocaine Base, in violation of 21 U.S.C. § 846; and Possession with Intent to Distribute in Excess of 50 grams of Cocaine Base, in violation of 21 U.S.C. § 851.  He was sentenced to a concurrent 120 months for Money Laundering; aiding and abetting in violation of 18 U.S.C. § 1956(1)(B)(i) and Monetary Transactions in Property derived from Illegal Activity, in violation of 18 U.S.C. § 1957(a).  He also received a 60 month consecutive sentence for Unlawfully Carrying a Firearm During Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c).  (Resp.'s Answer at 3.)

Following his conviction, Petitioner appealed.  On appeal, the Fourth Circuit vacated Petitioner's § 924(c) conviction for unlawfully carrying a firearm, pursuant to Bailey v. United States, 516 U.S. 137 (1995), and remanded for re-sentencing.  On September 6, 1996, Petitioner was re-sentenced in District Court to 240

---

or laws or treaties of the United States ....

months incarceration for Conspiracy to Distribute Excess of 50 grams of Cocaine Base, in violation of 21 U.S.C. § 846; and Possession with Intent to Distribute in Excess of 50 grams of Cocaine Base, in violation of 21 U.S.C. § 851; a concurrent 240 months for Money Laundering; aiding and abetting in violation of 18 U.S.C. § 1956(1)(B)(i); and a concurrent 120 months incarceration for Monetary Transactions in Property derived from Illegal Activity, in violation of 18 U.S.C. § 1957(a).  The 240 months included a sentence enhancement imposed by the District Court for possession of a firearm during a drug offense.  Id. (citing United States v. Woodson, 125 F.3d 850 (4th Cir. 1997)).  The District Court overruled Petitioner's objection to the enhancement. Petitioner appealed, alleging that the enhancement violated his rights under the Double Jeopardy and Due Process Clauses, but the Fourth Circuit affirmed the imposition of the enhancement. (Id. at 4.)

On December 6, 2005, Petitioner was sent to Federal Correctional Complex (FCC) Butner, located in Butner, North Carolina.  On or about December 16, 2008, Petitioner was advised that he was eligible to participate in the Residential Drug Abuse Treatment Program (RDAP) but was not eligible for a reduction in sentence under 18 U.S.C. § 3621(e), due to his instant offense. (Id. at 5.)

On March 5, 2009, Petitioner was sent to Federal Correctional Institution (FCI) Fort Dix, located in Fort Dix, New Jersey. Petitioner began the RDAP at FCI Fort Dix on March 29, 2010. He completed the residential portion of the program on January 28, 2011. Petitioner filed and exhausted his administrative remedies challenging his denial of early release eligibility. (Id.) Thereafter, he filed the instant Petition, alleging that the denial of early release eligibility associated with the completion of the RDAP program was an abuse of discretion. He further alleges that the decision violates the Equal Protection Clause, because other inmates have received a reduction in sentence even though they also received a two-level sentencing enhancement for possession of a firearm.

In her Answer, Respondent argues that Petitioner was properly denied early release eligibility due to his two-level sentence enhancement for possession of a firearm and that Petitioner's Equal Protection claim fails because he cannot identify a fundamental right, is not a member of a suspect class, and has not established that he was treated differently from similarly situated inmates.

Petitioner replied to Respondent's answer and argues that Angel Guzman, a fellow inmate that Petitioner alleges is similarly situated to himself for equal protection purposes, filed an administrative remedy with the then-current Warden of FCI Fort Dix, Jeff Grondolsky, on May 14, 2009. Guzman was appealing the

4

decision not to award him early release upon his completion of the RDAP because of his firearms sentence enhancement. Warden Grondolsky denied Guzman's request, stating that he was ineligible for early release because he had received a two point firearms enhancement. Upon Guzman's appeal to the Regional Office, the Regional Director issued a response stating that FCI Fort Dix had reconsidered his request and determined that he was eligible for early release. Petitioner argues that because Guzman, who had the same two point firearms enhancement as he did, was given early release based on his completion of RDAP and Petitioner was denied early release, his equal protection rights have been violated.

## II.   DISCUSSION

### A.   Standard of Review

"Habeas corpus petitions must meet heightened pleading requirements." McFarland v. Scott, 512 U.S. 849, 856 (1994). A petition must "specify all the grounds for relief" and must set forth "facts supporting each of the grounds thus specified." See Rule 2(c) of the Rules Governing § 2254 Cases in the U.S. District Courts (amended Dec. 1, 2004) ("Habeas Rules"), made applicable to § 2241 petitions through Rule 1(b) of the Habeas Rules.

Nevertheless, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting

submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969).

**B.   Legal Analysis**

The Violent Crime Control and Law Enforcement Act of 1994 amended 18 U.S.C. § 3621 to require the BOP to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse."  18 U.S.C. § 3621(b).  To carry out this requirement, the BOP must provide residential substance abuse treatment for all eligible inmates, subject to the availability of appropriations. 18 U.S.C. § 3621(e)(1).  An "eligible prisoner" is one who is "determined by the Bureau of Prisons to have a substance abuse problem," and who is "willing to participate in a residential substance abuse treatment program."  18 U.S.C. § 3621(e)(5)(B)(i) and (ii).  As an incentive for the successful completion of the residential treatment program, the BOP may, in its discretion reduce an inmate's sentence by up to one year.   18 U.S.C. § 3621(e)(2)(B); see also Lopez v. Davis, 531 U.S. 230 (2001).

The incentive provision of the statute reads, in pertinent part:

> The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but

> such reduction may not be more than one year
> from the term the prisoner must otherwise
> serve.

18 U.S.C. § 3621(e)(2)(B).

The BOP has promulgated regulations at 28 C.F.R. § 550.56 to implement the statutory requirement.  According to the regulations, in order to be considered for a residential treatment program, an inmate must have a verifiable drug abuse problem, must have no serious mental impairment which would substantially interfere with or preclude full participation in the program, must sign an agreement acknowledging his program responsibility, and must ordinarily be within 36 months of release and the security level of the residential program institution must be appropriate for the inmate.  28 U.S.C. § 550.56(a).  Participation in the program is voluntary, but all decisions on placement are made by the drug abuse treatment coordinator.  See 28 C.F.R. § 550.56(b).  The application of § 550.56 is set forth in BOP Program Statement 5330.10.[2]

---

[2] Program Statement 5330.10 defines the RDAP as consisting of three components: (1) a 500-hour minimum unit-based residential program; (2) an institution transition phase, which requires participation for a minimum of one hour a month over a period of 12 months after successfully completing the unit-based program; and (3) a community transitional services program where the inmate is transferred to a halfway house or home confinement for a period lasting up to six months. Successful completion of the RDAP occurs upon successful completion of each of these three components of the RDAP.  See 28 C.F.R. §§ 550.56, 550.59.

In these regulations, the BOP also defined prisoners who had
not been convicted of a nonviolent offense, and who thus were
ineligible for early release, as those prisoners who were currently
incarcerated for committing a crime of violence as defined in 18
U.S.C. § 924(c)(3).  28 C.F.R. § 550.58 (1995); see 60 Fed.Reg.
27,692, at 27, 695.  Following the promulgation of this 1995
regulation, the Courts of Appeals reached differing conclusions on
the question of whether the BOP had discretion to further define a
crime of violence as an offense involving a firearm, and thus
exclude from eligibility for the early release incentive those
prisoners who were incarcerated for such offenses.  See generally
Lopez, 531 U.S. at 234-35.[3]

---

[3]In Lopez, the Supreme Court held that it was a proper
exercise of discretion by the Bureau of Prisons to categorically
deny eligibility for early release to prisoners with "a prior
felony or misdemeanor conviction for homicide, forcible rape,
robbery, or aggravated assault, or child sexual abuse offenses,"
28 C.F.R. § 550.58(a)(1)(iv), or to prisoners whose current
offense is one of certain enumerated felonies involving the use
or attempted use of force, or involving the carrying, possession,
or use of a firearm or other dangerous weapon, or involving
sexual abuse upon children, 28 U.S.C. § 550.58(a)(1)(vi).  In
reaching this conclusion, the Court first noted that the language
of § 3621(e)(2) (B) grants the Bureau discretion to reduce a
prisoner's sentence for successful completion of a substance
abuse treatment program, but fails to define any parameters by
which the Bureau should exercise that discretion.

> In this familiar situation, where Congress has enacted a
> law that does not answer "the precise question at issue,"
> all we must decide is whether the Bureau, the agency
> empowered to administer the early release program, has
> filled the statutory gap "in a way that is reasonable in
> light of the legislature's revealed design." We think the
> agency's interpretation is reasonable both in taking

Given the split among the circuits, the BOP promulgated an interim regulation on October 15, 1997, and made the regulation effective approximately one week prior, on October 9, 1997. 28 C.F.R. § 550.58(a)(1)(vi)(B) (1997); 62 Fed.Reg. 53,690. The 1997 interim regulation, like the one it superceded, made ineligible for the early release incentive those prisoners incarcerated for an offense that involved the possession, use, or carrying of a firearm. 28 C.F.R. § 550.58(a)(1)(vi)(B). The 1997 interim regulation differs from the 1995 regulation by relying on "the discretion allotted to the Director of the Bureau of Prisons in granting a sentence reduction to exclude [enumerated categories of] inmates," 62 Fed.Reg. at 53,690, rather than purporting to define the statutory terms "prisoner convicted of a nonviolent offense" or "crime of violence."

The commentary accompanying publication of the 1997 interim regulation noted that the BOP was "publishing this change as an interim rule in order to solicit public comment while continuing to

---

account of preconviction conduct and in making categorical exclusions.

Lopez, 531 U.S. at 242 (citing, inter alia, Chevron, U.S.A ., Inc. v. National Resources Defense Council, Inc., 467 U.S. 837, 842 (1984)) (other citations omitted). Thus, "the statute's restriction of early release eligibility to nonviolent offenders does not cut short the considerations that may guide the Bureau." Lopez, 531 U.S. at 242; see also Magnin v. Beeler, 110 F.Supp.2d 338 (D.N.J. 2000) (upholding 28 C.F.R. § 550.58(a)(1) (vi), before Lopez, as a valid exercise of the Bureau's discretion).

provide consideration for early release to qualified inmates." 62
Fed.Reg. at 53,690.   Nevertheless, the effect of the implemented
interim regulation was to deny program eligibility to certain
categories of inmates confined at that time and until promulgation
of a final regulation.   The commentary to the interim regulation
further provided that comments on the interim rule were due on
December 15, 1997, and that the comments would be considered before
final action was taken.[4]

Three years later, on December 22, 2000, the BOP replaced the
1997 interim regulation with a final regulation, which adopted the
1997 interim regulation without change.   See 65 Fed.Reg. 80,745.
The final regulation was effective as of December 22, 2000.   Id.
The commentary accompanying the final regulation noted that the BOP
had received and considered approximately 150 comments from
individuals and organizations, 138 of which were identical.   Id. at
80,747.   Thus, the final regulation read, in pertinent part, as
follows:

      Consideration for early release.

------

[4]In Lopez, while the Supreme Court held that the 1997
interim regulation's categorical exclusion of prisoners based on
their involvement with firearms in connection with the commission
of a felony was a permissible exercise of the Bureau's
discretion, the Court declined to consider the arguments of
various amici that the 1997 interim regulations violated the
notice-and-comment provisions of the APA, as that argument had
not been raised or decided below, or presented in the petition
for certiorari. 531 U.S. at 230, 244 n. 6.

> An inmate who was sentenced to a term of imprisonment pursuant to the provisions of 18 U.S.C. Chapter 227, Subchapter D for a nonviolent offense, and who is determined to have a substance abuse problem, and successfully completes a residential drug abuse treatment program during his or her current commitment may be eligible, in accordance with paragraph (a) of this section, for early release by a period not to exceed 12 months.
>
> (a) Additional early release criteria.
>
> (1) As an exercise of the discretion vested in the Director of the Federal Bureau of Prisons, the following categories of inmates are not eligible for early release:
>
> ...
>
> (vi) Inmates whose current offense is a felony:
>
> ...
>
> (B) That involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives (including any explosive material or explosive device),
>
> ...

5 U.S.C. § 550.58 (2000). <u>See</u> <u>also</u> BOP Program Statements 5330.10, Drug Abuse Programs Manual-Inmate (1997), and 5162.04, § 7, Categorization of Offenses (1997) ("All offenses under 18 U.S.C. § 922(g) shall preclude an inmate from receiving certain Bureau program benefits.").

The Administrative Procedure Act ("APA") requires, with exceptions not relevant here, that proposed rules be published in the Federal Register, not less than 30 days before the proposed

rule's effective date, and provide a period for interested persons to comment on the proposed rule, which comments are to be considered by the agency prior to adopting the rule.  See 5 U.S.C. § 553(b),(c),(d).

Following promulgation of the 1997 interim regulation, the United States Court of Appeals for the Ninth Circuit determined that the 1997 interim regulation was invalid, for failure to follow the notice-and-comment requirements of the APA.  See Paulsen v. Daniels, 413 F.3d 999 (9th Cir. 2005).  The 2000 final rule, however, complied with the notice-and-comment requirements.

More recently, the Court of Appeals for the Ninth Circuit has held that the final 2000 rule is invalid, nevertheless, as "arbitrary and capricious" in violation of § 706(2)(A) of the APA, 5 U.S.C. § 706(2)(A), for failure to set forth a rationale for its categorical exclusion rule.  See Arrington v. Daniels, 516 F.3d 1106 (9th Cir. 2008).

In Arrington, the Ninth Circuit held that the Bureau's promulgation of § 550.58 was "arbitrary and capricious" because the Bureau failed to state, in the administrative record, an adequate rationale for its categorical exclusion of felons convicted of crimes that involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives.

> A general desire for uniformity provides
> no explanation for why the Bureau
> exercised its discretion to achieve
> consistency through the promulgation of a

> categorical exclusion rule. The Bureau's
> stated desire for uniformity could have
> been accomplished in any number of ways.
> For example, the Bureau could have
> achieved uniformity by categorically
> including prisoners with non-violent
> convictions involving firearms, thus
> making them eligible for early release: a
> result that would have been entirely
> consistent with the statute's aim of
> offering incentives for prisoner
> participation in residential substance
> abuse programs. Instead, it chose to
> achieve uniformity by categorically
> excluding such prisoners from
> eligibility. Although either choice in
> all likelihood would have withstood
> judicial scrutiny, the Bureau offered no
> explanation for why it exercised its
> discretion to select one rather than the
> other. The agency's lack of explanation
> for its choice renders its decision
> arbitrary and capricious.

Arrington, 516 F.3d at 1114 (citation omitted).  The Ninth Circuit

refused to consider the offered rationale that offenders with

convictions involving firearms pose an increased risk to the

public.  The public safety rationale, the Ninth Circuit concluded,

was not stated in the record and was merely a post hoc

rationalization.  Nevertheless, virtually every court to consider

the matter has rejected the rationale of Arrington.  See Snipe v.

Dept. of Justice, 2008 WL 5412868 (N.D.W.Va. Dec. 23, 2008)

(collecting cases).

On January 14, 2009, a new final rule was published in the

Federal Register at 74 FR 1892, et seq., which finalized three

previously-published proposed rules on the drug abuse treatment

program. In publishing the new final rule, the BOP provided a more

detailed explanation of its rationale for excluding from

eligibility for early release inmates convicted of offenses

involving he carrying, possessing, or using of firearms.

> [I]n the correctional experience of the
> Bureau, the offense conduct of both armed
> offenders and certain recidivists suggests
> that they pose a particular risk to the
> public. There is a significant potential for
> violence from criminals who carry, possess or
> use firearms. As the Supreme Court noted in
> Lopez v. Davis, "denial of early release to
> all inmates who possessed a firearm in
> connection with their current offense
> rationally reflects the view that such inmates
> displayed a readiness to endanger another's
> life." Id. at 240. The Bureau adopts this
> reasoning. The Bureau recognizes that there is
> a significant potential for violence from
> criminals who carry, possess or use firearms
> while engaged in felonious activity. Thus, in
> the interest of public safety, these inmates
> should not be released months in advance of
> completing their sentences.
>
> It is important to note that these inmates are
> not precluded from participating in the drug
> abuse treatment program. However, these
> inmates are not eligible for early release
> consideration because the specified elements
> of these offenses pose a significant threat of
> dangerousness or violent behavior to the
> public. This threat presents a potential
> safety risk to the public if inmates who have
> demonstrated such behavior are released to the
> community prematurely. Also, early release
> would undermine the seriousness of these
> offenses as reflected by the length of the
> sentence which the court deemed appropriate to
> impose.

74 FR 1892, 1895 (Jan. 14, 2009). Effective March 16, 2009, 28

C.F.R. § 550.58 was superseded by a new regulation which appears at

14

28 C.F.R. § 550.55.   The new regulation applies to anyone whose clinical interview (to qualify for participation in the Residential Drug Abuse Treatment Program) takes place on or after March 16, 2009.   To coincide with the effective date of the new regulation, the BOP rescinded Program Statement 5162.04 and replaced it with Program Statement 5162.05, also effective March 16, 2009.

In the instant case, Petitioner's RDAP and eligibility release determinations were made in November 2008; therefore, Program Statement 5162.04 applies, not Program Statement 5162.05.

**1. Equal Protection**

The Clause guarantees that "all persons similarly circumstanced shall be treated alike."  Plyler v. Doe, 457 U.S. 202, 216 (1982); see also Vacco v. Quill, 521 U.S. 793, 799 (1997) ("The Equal Protection Clause commands that no State shall deny to any person within its jurisdiction the equal protection of the laws").   The Clause does not, however, require "things which are different in fact or opinion to be treated in law as though they were the same." Plyler, 457 U.S. at 216 (quoting Tigner v. Texas, 310 U.S. 141, 147 (1940)).   In other words, the Clause "is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.'" Artway v. Attorney General of New Jersey, 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985)).

A petitioner who alleges an equal protection violation has the
burden of proving the existence of purposeful discrimination that
had a discriminatory effect on him.   See McCleskey v. Kemp, 481
U.S. 279, 292 (1987); Whitus v. Georgia, 385 U.S. 545, 550 (1967).
"Thus, to prevail under the Equal Protection Clause, [Petitioner]
must  prove  that  the  decisionmakers  in  his  case  acted  with
discriminatory purpose." McCleskey, 481 U.S. at 292. "[I]f a law
neither burdens a fundamental right nor targets a suspect class,
[the Court] will uphold the legislative classification so long as
it bears a rational relation to some legitimate end."   Romer v.
Evans, 517 U.S. 620, 631, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996).

In the case at hand, Petitioner has not alleged that he is a
member of a suspect class.   Further, Petitioner does not have a
fundamental right to early release after completion of the RDAP.
See Hillstrom v. Morris, 1996 WL 568842, at *4, n.5 ("[b]y analogy,
there is no constitutional right to a reduction in one's sentence
pursuant to § 3621.").   Therefore, in order to succeed on an equal
protection claim, Petitioner must establish that: (1) he was
treated differently than other prisoners in his circumstances; and
(2)  such  unequal  treatment  was  the  result  of  intentional  or
purposeful discrimination."   Id. (internal citations omitted).

Petitioner has alleged, and provided copies of administrative
remedy responses in support of his allegations, which indicate that

16

another inmate[5], Angel Guzman, who appears to have had a two point weapons sentence enhancement, was granted early release upon completion of the RDAP.  Petitioner provides a copy of the original denial of the request by then-FCI Fort Dix Warden Grondolsky and a copy of the response by the Regional Director.  The response from the Regional Director indicates that at some point after the initial denial of his request, FCI-Fort Dix subsequently reconsidered its determination and granted Mr. Guzman's request to receive early release.

Though Petitioner has provided documentation that indicates Mr. Guzman's request for early release was initially denied and then later granted by FCI-Fort Dix officials, no further details have been provided.  Specifically, it is not clear what the circumstances were regarding the reconsideration and no information has been provided as to the circumstances surrounding Mr. Guzman's underlying sentence or conviction.  Petitioner's initial determination of eligibility for early release was made while he was at FCC-Butner; it is not clear where Mr. Guzman was located when his initial determination was made.  In addition, Petitioner has not provided any evidence or even alleged with any specificity that he is being purposefully discriminated against.  He himself

---

[5] In his petition, Petitioner also states that two other inmates, Christopher Savoy, a Caucasian male whose father is an FBI agent, and an African-American male, Montrez Fields, who has cooperated with the government, have also received the early release after completion of the RDAP in spite of their two point weapons enhancements.  He does not provide any further information on these individuals or their particular situations.

even states in his petition that Angel Guzman is a Hispanic male and Christopher Savoy is a Caucasian male whose father is an FBI agent and Montrez Fields is an African-American male who has cooperated with the government and that "it's unknown if these factors played any role in these inmates receiving the one year reduction for completing the 500 hour component of RDAP...However, [they] are not being treated the same and no reasonable explanation has ever been provided as to why."  Petitioner is concluding that there must have been purposeful discrimination since he did not also receive early release, however he is not provided any support for that conclusion.

Therefore, as Petitioner has not provided any evidence or even alleged with any specificity that he is being purposefully discriminated against, nor has he shown that the three individuals were similarly situated to himself, his Equal Protection argument must fail.

**2. Administrative Procedure Act**

To the extent Petitioner contends that the 2000 final rule violates the APA proscription against arbitrary and capricious agency action and therefore his categorical exclusion from consideration for early release, pursuant to the 2000 final rule, was unlawful, this claim must also fail.

In Gardner v. Grandolsky, 585 F.3d 786 (3d Cir. 2009), the Court of Appeals examined Petitioner's challenge to the BOP

regulation categorically excluding felons whose offense involved possession of firearms from early release based upon participation in RDAP.  The Court of Appeals concluded that "the BOP articulated a sufficient rationale for 28 C.F.R. § 550.58(a)(1)(vi)(B) (2000) to satisfy the 'arbitrary and capricious' standard set forth in APA § 706(2)(A).  Although the BOP's public safety rationale was not explicit in the Federal Register notices for the 1997 or 2000 regulations, we conclude that the rationale may 'reasonably be discerned' from the regulatory history and attendant litigation." Gardner, 585 F.3d at 792 (citing Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) and Gatewood v. Outlaw, 560 F.3d 843, 847 (8th Cir. 2009)).  The Court of Appeals went on to hold:

> . . . the BOP's efforts to categorically exclude felons convicted of possession of a dangerous weapon from eligibility for early release have remained consistent since 1995.  The BOP amended the 1995 version of its regulation only because it could no longer uniformly apply it after the split among the Courts of Appeals developed concerning the BOP's Program Statement; the BOP expressly referred to the Circuit split in both its 1997 and 2000 Federal Register notices.  Because the litigation focused on the BOP's Program Statements, we find it both reasonable and appropriate to consider the Program Statements when discerning the agency's rationale for promulgating the 1997 and 2000 regulations.
>
> The BOP Program Statements expressly provide that the BOP's contemporaneous rationale for the categorical exclusion has consistently been for the purpose of protecting public safety.  Courts reviewing the regulation have long recognized the BOP's public safety rationale. See, e.g., Pelissero[ v. Thompson], 170 F.3d [442, ] 445 [4th Cir. 1999] (quoting the district court's conclusion that it is "entirely reasonable and certainly

19

not arbitrary for the BOP to equate gun possession and drug dealing with violence, thus supporting its interpretation of not being a 'nonviolent offense' "); <u>Venegas v. Henman</u>, 126 F.3d 760, 765 (5th Cir. 1997) (the BOP's "determination that a sufficient nexus exists between the offenses at issue and a substantial risk of violence is a valid exercise of discretion which this Court will not disturb").

<u>Gardner</u>, 585 F.3d at 792 (internal citations omitted). Additionally, the Court of Appeals asserted that, "the language of the regulation itself facially manifests a concern for protecting the public safety," and explained that the regulation denied eligibility for early release to other categories of prisoners who committed crimes demonstrating a potential for violence, including homicide, rape, robbery, etc.  See <u>id.</u> at 793 (citing 28 C.F.R. § 550.58(a)(1)) (other citation omitted).

Therefore, based upon the <u>Gardner</u> case, Petitioner is not entitled to relief on this claim.

**III. CONCLUSION**

For the reasons set forth above, the petition will be denied without prejudice to Petitioner's ability to provide evidentiary support for his equal protection claim.  An appropriate order follows.

s/Renée Marie Bumb
RENÉE MARIE BUMB
United States District Judge

Dated: **September 16, 2011**